STATE OF NEBRASKA, APPELLEE, V. RHONDA L. MOORE,
APPELLANT.
508 N.W.2d 305

Filed November 9, 1993.    No. A-92-1136.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

CONNOLLY, IRWIN, and WRIGHT, Judges.

WRIGHT, Judge.

Rhonda L. Moore was charged by information with unlawful possession of a controlled substance with intent to deliver. She filed a motion to suppress physical evidence seized by the police during a nighttime search of her residence. The trial court overruled her motion to suppress. In a bench trial, she was found guilty of unlawful possession of a controlled substance with intent to deliver and was sentenced to a term of 4 to 6 years in prison with credit for 7 days served. In this appeal, she assigns as error the overruling of her motion to suppress the physical evidence.

## STANDARD OF REVIEW

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold a trial court's findings of fact unless those findings are clearly erroneous. *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993); *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993).

## FACTS

On March 18, 1992, Douglas County Deputy Sheriff E.J. Van Buren prepared an affidavit and application for issuance of a search warrant for a residence located at 2704 South 13th Street in Omaha, Nebraska. Van Buren's affidavit stated that he had just and reasonable grounds to believe and did believe that there was concealed or kept on the premises cocaine and its derivatives, administering instruments, moneys, and records pertaining to possession and distribution of the controlled substance. Van Buren stated that the property was under the control of Moore.

The affidavit stated that on January 25, 1992, at 5:02 p.m., Van Buren, in an undercover capacity, met a known but unnamed individual who obtained one-eighth of an ounce of cocaine for Van Buren from the residence at 2704 South 13th Street. Another deputy conducting surveillance observed the individual walk to the residence, enter the front door at approximately 5:26 p.m., and then exit at approximately 5:30 p.m. The one-eighth ounce of the substance delivered to Van Buren was tested by chemical analysis and found to be cocaine. On March 16, the same unnamed individual obtained another

one-eighth ounce of cocaine for Van Buren from the same residence. The individual was observed entering the residence at about 7:55 p.m., and then delivered another one-eighth ounce to Van Buren, which substance field-tested positive for cocaine.

The application for the warrant requested a nighttime search because the investigation "may terminate during the night-time hours, due to the hour that this warrant application is being prepared, and the nature of this investigation." The application requested a no-knock search warrant because the officers "may be at great risk to life and limb, and evidence may be easily destroyed." Van Buren stated that he was told by a reliable confidential informant that the occupants of the residence had a shotgun and a handgun in their possession and that the residence was known to be a modern residence equipped with modern plumbing, including running water. Van Buren stated that based on his past experience, "these facilities" could easily be used to destroy evidence of the type that was being sought under the warrant.

The search warrant was issued by a county judge, who found probable cause to believe that sufficient grounds existed for the issuance of the warrant based on Van Buren's written affidavit. The warrant authorized entry of the premises "at any time" without knocking or announcing police authority. The court found that "if officers anounced [sic] their presence and intention[,] officers will be at great risk to life and limb, and evidence may be destroyed." The warrant was executed on March 24, 1992, at approximately 9 p.m.

Moore filed a motion to suppress all evidence obtained pursuant to the warrant, arguing that the affidavit did not contain sufficient information to establish probable cause to believe evidence of a crime would be found in her home on March 24, 1992. She claimed the warrant was in violation of her Fourth Amendment rights because it was executed untimely, 6 days after the application, and at night, in violation of Neb. Rev. Stat. § 29-814.04 (Reissue 1989).

At the suppression hearing, the court found there was sufficient probable cause shown in the affidavit for the issuance of the warrant. In considering whether the warrant had become stale by the date of its execution on March 24, 1992, the court

held that an inference could be drawn from two prior drug buys on January 25 and March 16 that a quantity of cocaine was kept on hand by Moore. The court found that probable cause had not become so stale that it dissipated into extinction. In holding that the warrant could be executed at any time, the court determined that an inference could be drawn that the officer anticipated as he prepared the affidavit that it would not be finished or the warrant signed until after 8 p.m. and that although prior buys had occurred during the daytime, the last buy concluded at 7:58 p.m., just 2 minutes before 8 p.m., statutory nighttime. The court noted that in March it is dark at 7:58 p.m. and that although not statutorily nighttime, 1 or 2 minutes before 8 p.m. was not a sufficient reason to find that the purchase of narcotics was not at night. Because the prior buy was at around 8 p.m. and the sale of cocaine is a detriment to the best interests of the public, the district court found that the county court was correct in issuing a search warrant to be served at any time.

## ANALYSIS

Appellate review of a search warrant is restricted to consideration of the information contained within the four corners of the affidavit for the search warrant. Evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992). In an appellate court's determination of the correctness of a trial court's ruling on a motion to suppress, the appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Stott*, 243 Neb. 967, 503 N.W.2d 822 (1993). Therefore, in determining whether the trial court erred, we consider only the facts set forth in the affidavit.

The burden is upon a defendant who seeks to suppress evidence obtained pursuant to a search warrant to establish that the search warrant is invalid so that the evidence secured thereby may be suppressed. *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993). In reviewing the sufficiency of the affidavit, an appellate court considers the "totality of the circumstances" test which is set forth in *Illinois v. Gates*, 462

U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Given the totality of the circumstances set forth in the affidavit, the issuing magistrate must make a practical commonsense decision that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Utterback, supra.*

Moore argues that the affidavit failed to support the court's finding that the public interest required a nighttime search of the premises. Section 29-814.04 provides that a warrant shall "be served in the daytime unless the magistrate or judge is satisfied that the public interest requires that it should not be so restricted, in which case the warrant may direct that it may be served at any time." Daytime is defined as "the hours from 7:00 a.m. to 8:00 p.m." *Id.*

Issuance of the warrant was based on two controlled buys of cocaine, one made 2 days prior to the application for the search warrant. The reliability of the information obtained is not at issue because the affiant was the deputy who made the purchase. The seller of the cocaine was observed by another deputy as the seller left the subject residence. Based on the totality of the circumstances contained in the affidavit, we find that there were sufficient facts to justify a finding of probable cause for the issuance of the warrant. Moore does not argue otherwise.

We first consider whether the execution of the warrant was improper because it occurred on March 24, 1992, 6 days after the warrant was issued. In *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991), an application for a warrant was based on information from an informant who had been inside the house within the previous 72 hours, but the sheriff's office waited 9 days after receiving the warrant before executing it. The court rejected the defendant's argument that the warrant was executed too late by stating that Neb. Rev. Stat. § 29-815 (Reissue 1989) requires that a warrant be executed and returned within 10 days after the date of its issuance. Since the warrant was executed and returned within the statutory time period, the court determined that the defendant's argument was without merit. We make a similar finding in this case. The execution of the warrant 6 days after its issuance does not require

suppression of evidence obtained based on the warrant.

We next address whether the issuance of the warrant for an "anytime" search and the execution of the warrant at approximately 9 p.m. were clearly in violation of § 29-814.04. Our review, therefore, is to determine whether the court could reasonably determine that the public interest required nighttime service of the warrant. The district court drew the inference that the officer anticipated he would not complete the preparation of the affidavit and application for the warrant before 8 p.m. The court noted that the last purchase of cocaine at the house concluded at 7:58 p.m., just 2 minutes before statutory nighttime, and that reason and logic dictated that the purchase concluding 2 minutes before statutory nighttime was not a sufficient reason to find that the purchase of the narcotics did not occur at night. Thus, the court reasoned that the previous buy had occurred at night and that the sale of cocaine was a detriment to the best interests of the public, which supported the issuance of a search warrant to be served at any time in the interests of the public and the interests of justice.

In order to authorize the issuance of a search warrant for service during the nighttime under § 29-814.04, the magistrate or judge must only be satisfied from a commonsense reading of the affidavit in support of such issuance that it reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service. *State v. Paul*, 225 Neb. 432, 405 N.W.2d 608 (1987). In our review of the court's ruling on the motion to suppress, we cannot say that the court's findings were clearly erroneous.

We note that the U.S. Courts of Appeals for the Eighth and Sixth Circuits have held that a violation of a procedural rule regarding nighttime searches does not per se invalidate the search. In *United States v. Searp*, 586 F.2d 1117 (6th Cir. 1978), *cert. denied* 440 U.S. 921, 99 S. Ct. 1247, 59 L. Ed. 2d 474 (1979), the U.S. Court of Appeals for the Sixth Circuit acknowledged that there was probably no more offensively invasive procedure than a nighttime entry into a private home, but the procedures by which nighttime search warrants are governed are not included in the Fourth Amendment. Therefore, suppression of evidence does not automatically

result from violation of the procedural rules. To require suppression as a result of the violation of procedural rules, there must be a showing that there was prejudice in the sense that the search might not have occurred, that the search would not have been so abusive if the rule had been followed, or that there was evidence that the rule was deliberately and intentionally disregarded. *Searp, supra.*

In *U.S. v. Schoenheit*, 856 F.2d 74 (8th Cir. 1988), the court held that noncompliance with Fed. R. Crim. P. 41 does not automatically mandate suppression of the evidence. Rule 41(c)(1) provides in part: "The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." The court pointed out that the time of the search is relevant to determine whether a search is reasonable under the federal Constitution, but there is no authority for concluding that a search is per se unconstitutional because it was conducted at night. The Eighth Circuit adopted the same test as set forth by the Sixth Circuit in *Searp, supra.*

As we review the facts, we do not find that the search would not have occurred or would not have been so abusive if the search had been during the daytime. There was probable cause for the issuance of a warrant. The warrant was executed at about 9 p.m., not in the middle of the night, but at a time of the year when it is dark before 8 p.m. Moore has not shown that she was prejudiced by the execution of the warrant at approximately 9 p.m. or that the search was in violation of her Fourth Amendment rights.

For the reasons set forth herein, we affirm the judgment and sentence of the district court.

AFFIRMED.